UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x
FLIGHTDOCS, INC.,

       Plaintiff,

  - against -

STEVEN H. JACKSON, DAVID WUNSCH,
LORETTA MORMINO, JOHN MORMINO,
CLAUDIA JACKSON and DOBERDOCS,
LLC,

       Defendants.

---------------------------------------------x

MEMORANDUM AND ORDER

Civil Action No.
04-CV-4840 (DGT)

TRAGER, District Judge:

    Plaintiff Flightdocs brings this action against Steven H. Jackson, David Wunsch, Loretta Mormino, John Mormino and Claudia Jackson (the "individual defendants") for tortiously interfering with an agreement that Flightdocs made with the defendant company, DoberDocs, causing DoberDocs to breach the agreement. The individual defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, to stay the action pursuant to 9 U.S.C § 3, pending the outcome of an arbitration that is ongoing in Dallas, Texas concerning whether there was a breach of contract. For the reasons stated below, defendants' motion to dismiss is granted.

**Background**

    Plaintiff Flightdocs provides aircraft maintenance, tracking and technical services to owners and operators of airplanes.

Verified Compl. ¶ 7. Plaintiff also provides services to customers that assist in converting an aircraft's historical maintenance records to electronic formats. Id. These services facilitate required maintenance to the aircraft in keeping with United States Federal Guidelines. Pl's Mem. in Opp. ("Pl's Mem.") at 3.

**(1)**

**The Agreement**

Except where otherwise noted, the following facts are drawn from the Verified Complaint ("complaint") and, for purposes of this motion, are presumed to be true. On approximately July 18, 2003, plaintiff Flightdocs entered into a ten-year "Marketing and Source Code Conveyance Agreement" (the "Agreement") with defendant company DoberDocs, LLC, a professional provider of document and data management services. Verified Compl. ¶ 8. Rick Heine is the majority owner of plaintiff Flightdocs and was the person who signed the Agreement on Flightdocs' behalf. Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Verified Complaint or, in the Alternative, to Stay this Action Pending Arbitration ("Defs' Mem.") at 2. Steve Jackson, the President of DoberDocs, signed on behalf of his company. Verified Compl. ¶ 13. Pursuant to the Agreement, Flightdocs purchased a fifty percent interest in a software program for aircraft maintenance tracking (the "Software"),

2

which, prior to the agreement, had been fully owned by DoberDocs. Id. ¶¶ 9-10. This purchase gave plaintiff the exclusive right to enhance and market the Software as part of its system. Id. ¶ 10. As a direct result of the Agreement, plaintiff invested two million dollars and hired sales and marketing professionals, advertised its new system in trade publications, and paid technicians to further develop the Software they acquired. Id. ¶¶ 11, 31. The Agreement also stipulated that DoberDocs would provide Flightdocs and its customers with support services in connection with maintenance tracking for customer aircrafts. Id. ¶ 12. DoberDocs also claims to have increased its workforce by over 200% in order to handle its additional workload. Defs' Mem. at 3.

The only parties to the Agreement were Flightdocs and DoberDocs, and the Agreement contained confidentiality clauses so that only Heine and Jackson, as sole owners of their respective companies, were to know anything about it. Pl's Mem. at 4. The Agreement was specially designed to prevent the possibility of a third party entering and interrupting the relationship between the two companies. See Verified Compl. ¶ 29.

There are a number of representations that defendant DoberDocs made to plaintiff Flightdocs that Flightdocs relied upon in entering into the Agreement. Verified Compl. ¶ 16. For example, at the time of the execution of the Agreement, Jackson

represented to Flightdocs that he was the sole member and principal of DoberDocs. Id. ¶ 14. Jackson also assured Flightdocs that he had sufficient money with which to fund the growth of DoberDocs for at least five years. Id. Finally, Jackson promised Flightdocs that he was going to pay off a $150,000 personal debt that he had accrued, which would leave him with enough assets to assist Flightdocs as required by the Agreement. Id. ¶ 15.

The Agreement between the two companies also stipulated that "either party may sell their individual company (or interest therein) to any third-party, provided, however, that they first give to the other party hereto a right of first refusal to purchase the other's company." Id. ¶ 27. This stipulation further demonstrates the express intention on behalf of the companies, when forming the Agreement, that there be no interference from outsiders. Id. ¶ 29. However, Flightdocs later discovered that DoberDocs had sold or transferred equity interests in the company to: (1) Claudia Jackson; (2) Loretta Mormino, who served as the Chief Financial Officer of DoberDocs; (3) John Mormino and (4) David Wunsch, who served as Chief Operating Officer of DoberDocs and who owns Aviation Management Services, which is a partial owner of DoberDocs. Id. ¶ 27; Defs' Mem. at 2. Doberdocs claims that all of the individual defendants are either past employees, officers and/or partial

4

owners of DoberDocs. Defs' Mem. at 2. Flightdocs had no prior knowledge of any such sale or transfer and received no advanced notice or right of first refusal as required under the Agreement. Verified Compl. ¶ 28. Also, with the exception of Jackson, the individual defendants are not signatories to the Agreement.

**(2)**

**Breach of the Agreement**

In July 2004, DoberDocs informed Flightdocs that it was no longer willing to fund its business operations and was therefore ceasing all services to Flightdocs with only three days' notice. Id. ¶ 22. A withdrawal by DoberDocs as a service provider on such short notice was potentially fatal to the business operations of Flightdocs, which requires constant monitoring and reporting of required aircraft maintenance. Pl's Mem. at 8. DoberDocs then demanded various amounts of money from Flightdocs, claiming that it required additional funds to continue providing customer support to Flightdocs. Verified Compl. ¶ 23. DoberDocs later demanded that Flightdocs "buy out" DoberDocs for over one million dollars, threatening that it would otherwise be forced to shut down its business operation and interrupt service to Flightdocs' customers. Id. ¶ 25. Jackson told Flightdocs that he had to "deal with Dave [Wunsch] and Loretta [Mormino] who have followed [him] based on significant anticipated returns and gross revenues to date that have not been realized." Id. ¶ 26.

5

Flightdocs, therefore, felt that DoberDocs was attempting to extort it into paying off the unauthorized financial commitment that DoberDocs had made to the individual defendants. Id. ¶ 31. The Agreement included a provision stating that "[s]hould Flightdocs stop using DoberDocs for the services DoberDocs provides through this Agreement when DoberDocs is not in default . . . then . . . Flightdocs shall pay to DoberDocs all fees and subscriptions that would have been paid to DoberDocs under the terms and conditions of this agreement for the remainder of the term of this agreement." Pl's Mem. at 8. Flightdocs, therefore, alleges that DoberDocs began to provide unacceptable service, in an attempt to force Flightdocs into taking an action that would be interpreted as a default under the Agreement and would, therefore, allow DoberDocs to receive payment from Flightdocs for the remainder of the Agreement without providing any service as required by the provision mentioned supra. Verified Compl. ¶ 31. Flightdocs also believes that DoberDocs was attempting to force Flightdocs out of business so that DoberDocs could retake its software. Id.

Flightdocs made efforts to resolve the situation by offering to purchase certain assets from DoberDocs. Id. ¶ 32. Throughout these negotiations, DoberDocs and Jackson repeatedly indicated that the individual defendants "were exerting significant financial pressure on the company and that said financial

6

pressure was a significant cause to the financial stress resulting in the pending shutdown of business operations." Id. ¶ 33. On July 30, 2004, Flightdocs found that there was an additional undisclosed investor, Aviation Management Systems. Pl's Mem. at 10. On July 30, 2004 DoberDocs refused to provide any documentation relating to the asset sale, and Flightdocs and Doberdocs were, therefore, unable to arrive at a purchase agreement, causing DoberDocs to cease business operations. Verified Compl. ¶¶ 34, 35. On July 31, 2004, Flightdocs offered to buy a more limited asset group which it felt comfortable purchasing without documentation for a lower amount. Id. ¶ 36. Jackson told Flightdocs that the "other principals," the individual defendants, wanted $150,000. Id. ¶ 36. Jackson also told Heine that the individual defendants were so angry with Flightdocs for not taking the deal, that they were going to call the Federal Aviation Administration and customers to falsely report that Flightdocs was providing substandard service and endangering the lives of aircraft operators and passengers."[1]

---

[1] As previously mentioned, because this is a motion to dismiss, the facts must be viewed in the light most favorable to the plaintiff. However, it is important to note that the defendants' version of these same incidents paint a completely different portrait on the events as described by plaintiff, and, therefore, plaintiff denies them. Pl's Mem. at 3. Defendants claim that Flightdocs was not meeting the minimum performance standards as set out in Section XXII of the Agreement. Defs' Mem. at 3. As a result, Jackson informed Heine that he would have to reduce DoberDocs' staff because Doberdocs did not have sufficient money to pay them, and the two parties began

7

Id. ¶ 37.

**(3)**

**Litigation**

The present action was commenced on or about August 4, 2004 in the Supreme Court of New York. Plaintiff's Mem. at 2. On November 2, 2004, the defendants filed a notice of removal of this action to this court. Id. Now, after having successfully removed the present action into this court, defendants seek to dismiss plaintiff's complaint for lack of jurisdiction.

**(4)**

**Arbitration**

On or about November 11, 2004, about three months after plaintiff Flightdocs filed its complaint with the Supreme Court

---

negotiating the sale of DoberDocs to Flightdocs for $300,000. Id. To facilitate this sale, the companies negotiated the terms of an asset purchase agreement. Id. Heine then refused to go forward with the sale and instead served a letter from his legal counsel charging that DoberDocs had materially breached the terms of the Agreement. Id. at 4. Heine then called Jackson and offered to purchase DoberDocs for $100,000, which Jackson refused, demanding the original agreed-upon price, which Heine would not pay. Id. Instead, Heine tried to take over DoberDocs; instructed former DoberDocs employees to remove equipment from DoberDocs; contacted the landlord of the premises being leased by DoberDocs; and demanded that the locks be changed and plaintiff be the only one granted access. Id.

of New York, and five days after Doberdocs removed the case to this court, DoberDocs commenced an arbitration proceeding against Flightdocs in Dallas, Texas pursuant to Section XXI of the Agreement, for breach of contract. Defs' Mem. at 4. The Arbitration Provision of the Agreement states: "Any controversy or claim about or related to this agreement or any breach, including any claim that this agreement or any portion is invalid, illegal or otherwise voidable, shall be submitted to arbitration in accord with the rules of the American Arbitration Association." Flightdocs responded to DoberDocs' call for arbitration by submitting a counterclaim in the arbitration alleging that DoberDocs was the party who had breached the Agreement. Id. A final decision has yet to be rendered regarding a breach of the agreement by either party. Id. at 3-4.

**Discussion**

**(1)**

**Forum Shopping**

Plaintiff argues that the defendants "are not interested in reaching a final determination on the merits and are merely interested in delaying the case while [the defendants] continue[] to forum shop." Pl's Mem. at 16. In support of its accusation, plaintiff points to that fact that the action was originally brought in New York State Court, was removed by the defendants to

9

this court and now defendants seek to dismiss the action, claiming that this court lacks jurisdiction. Id. at 15. As a result, plaintiff contends that defendants should be estopped from seeking dismissal of the action for lack of subject matter jurisdiction when they themselves have removed the action to this court. Id. Although defendants' actions may suggest an intent to "forum shop," there is no precedent to prevent them from removing the action to federal court and then seeking dismissal. See, e.g., Earthtrade, Inc. v. General Brands International Corp., 95 Civ. 8913 (LMM) 1996 U.S. Dist. LEXIS 1520 (S.D.N.Y. Feb. 7, 1996) (finding that the action before the court should be dismissed in favor of arbitration where the defendant first removed the action to federal court in the Southern District of New York and then moved the court to compel the parties to arbitrate the dispute). Defendants have a right to ensure that this case be heard in federal court, as there is diversity jurisdiction, and then to further argue that any arbitrable claims be arbitrated. There is simply no irreconcilable contradiction in defendants seeking dismissal of this action for lack of jurisdiction even after having claimed jurisdiction in the very same court. See id.

### (2)
### Failure to State a Claim

A district court may grant a motion to dismiss for failure

10

to state a claim only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Tarish v. Riese Organization, 211 F.3d 30, 35 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Therefore, before granting a motion to dismiss, this court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally. Tarish, 211 F.3d at 35. Reading the complaint in light of the rules outlined above, plaintiff has alleged a proper claim of tortious interference with a contract. Under New York law, there are four elements essential to the tort of intentional interference with contract: (1) the existence of a valid contract; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the breach of that contract and (4) damages caused by the breach. Excellus Health Plan, Inc., v. Tran, 287 F. Supp. 2d. 167, 176 (W.D.N.Y. 2003) (citing G.K.A Beverage Corp. v. Honickman, 55 F.3d 762, 767 (2d Cir. 1995)) (citing Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993)). Plaintiff alleges that: (1) Flightdocs entered into a ten year agreement with Doberdocs, Verified Compl. ¶ 8; (2) the individual defendants had "full knowledge of the existing contract," Id. ¶ 46; (3) the individual defendants "maliciously and without

11

justification induced directed and/or authorized or caused Doberdocs to breach the Agreement," Id. ¶ 47; and (4) plaintiff "has been damaged in the amount of $2,000,000" as a result, Id. ¶ 48. Because plaintiff has properly alleged all necessary elements of a claim for tortious interference with contract, defendants' motion to dismiss for failure to state a claim is denied.

**(2)**

**Request to Dismiss or Stay the Action**

The Federal Arbitration Act (the "Act") requires that when a court determines that an action before it is subject to an enforceable arbitration provision it shall "stay the trial of the action" until arbitration is held. 9 U.S.C § 3 (2005). The Act, therefore, creates a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. EEOC v. Rappaport, Hertz, Cherson & Rosenthal, 273 F. Supp. 2d 260, 263 (E.D.N.Y. 2003) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991); Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 369 (2d Cir. 2003)). "In determining whether to compel arbitration, a court must decide: (1) whether the parties agreed to arbitrate [and] (2) the scope of the agreement." EEOC, 273 F. Supp. at 264 (citing Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 118 (2d. Cir. 1991)). Plaintiff conceded

that it agreed to arbitrate the breach of contract issue with Doberdocs, and has even submitted itself to arbitration in Texas, which satisfies the first element. Therefore, the scope of the agreement to arbitrate must be examined next.

As a result of "the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability, which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Smith/Enron Congregation, 198 F.3d at 99. The arbitration provision of the Agreement states that "[a]ny controversy or claim about or related to this agreement or any breach . . . shall be submitted to arbitration." Plaintiff alleges six "causes of action" for relief against the individual defendants, but in actuality these six actions simply amount to a single claim that the defendants intentionally interfered with the Agreement. See Verified Compl. ¶¶ 38-61. Plaintiff's claim falls within the scope of the arbitration provision since this allegation clearly relates to both the Agreement and its breach. Plaintiff's main accusation in both his claim for breach and the present action is that the Agreement specified that there be no interference from outsiders such as the individual defendants. The claim of tortious interference as well as breach of contract

being arbitrated in Texas will, therefore, necessarily involve a detailed reading of the Agreement and an analysis of the actions of the individual defendants, which shows that this action is well within the scope of the agreement to arbitrate.

In addition, the Second Circuit in <u>Genesco, Inc. v. T. Kakiuchi & Co., Ltd.</u>, 815 F.2d 840 (2d Cir. 1987), found that "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [a court should] focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." <u>Id.</u> at 846. Although the cause of action asserted in this case is framed in tort, the claim is so closely related to the Agreement and its breach that if this action were allowed to proceed it is likely that "the facts and issues would be substantially similar in both proceedings, making substantial duplication of effort inevitable." <u>Hikers Industries v. William Stuart Industries</u>, 640 F. Supp. 175, 178 (S.D.N.Y. 1986). Therefore, the claim made by plaintiff falls squarely within the scope of the arbitration provision it signed, and is an arbitrable issue.

Because the issue of tortious interference is well within the broad bounds of the arbitration agreement, the only question

left to decide is whether the individual defendants, most of whom are not signatories to the Agreement, may compel plaintiff, a signatory to the Agreement, to arbitrate.[2]  The Second Circuit has recognized a series of theories binding non-signatories to arbitration agreements," including the theory of estoppel.  Ryan, Beck & Co., LLC v. Fakih, 268 F. Supp. 2d 210, 219 (E.D.N.Y. 2003) (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).  Under principles of estoppel, the Second Circuit has also found that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the "relationship among the parties, the contracts they signed . . . and the issues that had arisen" among them discloses that "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."  JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir.

---

[2] Plaintiff has also named Doberdocs as a defendant in this action, but has failed to make any allegations against the company.  There are two actions which plaintiff might possibly be asserting against: (1) breach of contract or (2) tortious interference with contract.  The two companies have an ongoing arbitration in Texas concerning the alleged breach, and, therefore, this is not a proper matter before this court as plaintiff has already agreed that it is an arbitrable issue.  In addition, it would be ridiculous to allege that Doberdocs both breached its contract and tortiously interfered in its own contract.  See Lyon Ford, Inc. v. Ford Marketing Corporation, 337 F. Supp. 691 (E.D.N.Y. 1971) ("A party to a contract cannot be liable for conspiring to breach its own agreement.")  Therefore, Doberdocs is dismissed as a defendant in this action.

15

2004) (citing <u>Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.</u>, 271 F.3d 403, 406 (2d Cir. 2001)). The Second Circuit, however, has had no occasion to specify the minimum requirements of the "intertwined-ness" that is required to support a finding of estoppel. <u>JLM Industries, Inc.</u>, 387 F.3d at 178. Instead, it has cautioned that the estoppel inquiry is fact-specific. <u>Id.</u> (citing <u>Smith/Enron Cogeneration</u>, 198 F.3d at 97).

Upon inspection of the current action, it is apparent that the question of whether the individual defendants induced Doberdocs to breach the Agreement is so greatly linked to the issue of whether Doberdocs actually breached the contract that plaintiff should be compelled to arbitrate the issue against the individual defendants. First, it has already been discussed <u>supra</u> that an essential element of plaintiff's tortious interference claim against the individual defendants is whether there was a breach of contract. See <u>Israel v. Dolson</u> 1 N.Y.2d 116, 118 (1956). In other words, without a showing that there was a breach of contract by Doberdocs, plaintiff will be unable to prove its tortious interference claims against the individual defendants and this action would be pointless. See <u>HG Estate v. Corporacion Durando, S.A., De De C.V.</u>, 271 F. Supp. 2d 587 (S.D.N.Y. 2003) (finding "intertwined-ness" where the non-signatory defendant would avoid liability to the plaintiff for

16

the present action if the arbitration found that the plaintiff procured the contract by fraudulent inducement). Second, because the individual defendants allegedly induced the breach of contract, it is likely that the arbitration will address the very issue of whether the defendants actually caused Doberdocs to breach the Agreement. As stated supra, the plaintiff, throughout its complaint, alleges that the Agreement was created with the intention that no other parties interfere with the contract aside from Flightdocs and Doberdocs. At the forefront of plaintiff's breach of contract allegation, therefore, is that the individual defendants' involvement as investors in Doberdocs was not authorized and thus was a major cause of the breach. Therefore, the issue of whether the individual defendants induced a breach of contract is so greatly "intertwined" with the ongoing arbitration in Texas that the defendants should be allowed to compel plaintiff to arbitrate the issue presently before the court.

It is also necessary to consider the great "policy considerations of judicial economy and avoidance of confusion and inconsistent results in support of granting a [motion to compel arbitration] where common questions of law and fact are likely to be determined in arbitration." Hikers Industries, 640 F. Supp. at 178. Finally, although "a court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party,

we do not face that concern here," because plaintiff has clearly signed the Agreement and has voluntarily submitted to arbitrate the breach of contract issue, and it is the non-signatory to the contract who wishes to compel the arbitration that has already been agreed to by plaintiff. Smith/Enron Cogeneration, 198 F.3d at 97. Therefore, although the individual defendants are not signatories to the contract between Flightdocs and Doberdocs, Flightdocs is estopped from resisting arbitration, which the individual defendants seek to compel.

## Conclusion

For the foregoing reasons, this action is dismissed with leave to re-open in the event the Texas arbitration fails to resolve all the issues concerning tortious interference with contract. The Clerk of the Court is directed to close the case.


Dated:   Brooklyn, New York
         August 22, 2005

                                    SO ORDERED:


                                       /s/
                                    David G. Trager
                                    United States District Judge